United States District Court
Southern District of Texas

**ENTERED**

March 11, 2022

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DOMINGO AMARO-SOLIS, | § | |
| TDCJ #02069544, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-21-1634 |
| BOBBY LUMPKIN, Director, | § | |
| Texas Department of Criminal | § | |
| Justice - Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Domingo Amaro-Solis (TDCJ #02069544) has filed a Petition for a Writ of Habeas Corpus by a Person in State Custody under 28 U.S.C. § 2254 ("Petition") (Docket Entry No. 1) to challenge a conviction in a Harris County, Texas, court for aggravated sexual assault. He has also submitted a Memorandum of Law in Support of Habeas Corpus Petition ("Memorandum") (Docket Entry No. 2). Now pending is Respondent [Bobby] Lumpkin's Motion for Summary Judgment with Brief in Support ("Respondent's MSJ") (Docket Entry No. 13), arguing that Amaro-Solis is not entitled to relief. Amaro-Solis has replied with Petitioner's Objection to Respondent's Answer and Request for a Summary Judgment (Docket Entry No. 15). After considering all of the pleadings, the state court records, and the applicable law, the court will grant Respondent's MSJ and dismiss this action for the reasons explained below.

## I.  <u>Background</u>

A local grand jury returned an indictment against Amaro-Solis in Harris County Case No. 1477624, accusing him of aggravated sexual assault while using or exhibiting a deadly weapon — namely, a knife — to commit the offense.[1]  A jury in the 339th District Court of Harris County, Texas, found Amaro-Solis guilty as charged in the indictment.[2]  After hearing additional evidence during the punishment phase of the trial,[3] the same jury sentenced Amaro-Solis to 55 years' imprisonment in the Texas Department of Criminal Justice.[4]

On direct appeal Amaro-Solis argued that testimony from several witnesses was admitted improperly during the guilt-innocence phase of the trial.  The intermediate court of appeals rejected that claim after summarizing the evidence and relevant procedural background:

> Appellant knocked on the door of the complainant's apartment and told her that the apartment complex's maintenance supervisor had sent him to inspect her carpets.  The complainant let appellant inside of her

---

[1]<u>See</u> Indictment, Docket Entry No. 14-6, p. 122.  For purposes of identification, all page numbers refer to the pagination imprinted by the court's Electronic Case Filing ("ECF") system.

[2]Judgment of Conviction by Jury, Docket Entry No. 14-6, p. 126; Court Reporter's Record, vol. 6, Docket Entry No. 16-7, p. 31 lines 23-25.

[3]Court Reporter's Record, vol. 7, Docket Entry No. 16-8, pp. 8-68.

[4]Judgment of Conviction by Jury, Docket Entry No. 14-6, p. 126; Court Reporter's Record, vol. 8, Docket Entry No. 16-9, p. 21 lines 16-20.

apartment.     According to the complainant, appellant
pulled out a knife and forced the complainant into the
bedroom at knife point where he forced sexual contact.
While at knife point, the complainant remembered she had
something cooking on the stove and told appellant that
the food would burn and set off the apartment alarm.  She
asked appellant to put down the knife while they went
into the kitchen to turn off the stove.  Appellant left
the knife in the bedroom and held onto the complainant as
they walked into the kitchen.  When appellant went to
turn off the stove, he let go of the complainant with one
hand.    The complainant used that moment to throw
appellant against the sink and attempt to run away.
Appellant caught her, but she was able to scream for
help.  A neighbor came running down the stairs and when
appellant heard the footsteps, he fled.  Transferred by
ambulance to a hospital, the complainant underwent a
sexual-assault examination.

     A police investigation followed.  While speaking to
the apartment maintenance supervisor, a police officer
spotted appellant on the premises.  When appellant saw
the officer pointing at him, appellant began running.
The officer chased him and took him into custody.
Appellant was arrested and charged with aggravated sexual
assault.  Appellant pleaded, "not guilty."

     Before trial, the State gave appellant notice of its
intent to use the testimony of three residents of the
apartment complex who interacted with appellant.
Appellant filed a motion in limine objecting to the
evidence.   The trial court held a hearing outside the
presence of the jury.  At the hearing, appellant objected
to the evidence under Texas Rule of Evidence 404(b) and
stated also that unfair prejudice outweighed the
probative value of the evidence.    The trial court
overruled appellant's objections.

     At  trial,  the  State  put  on  testimony  of  a
maintenance worker who heard the complainant calling for
help and saw appellant leaving her apartment as well as
several other witnesses who described the complainant's
demeanor as extremely emotional.   The complainant
identified appellant and testified about how he attacked
her.   The State also put on testimony from the three
residents of the apartment complex.

     The first resident testified that a man knocked on
his door stating he was coming to clean the carpets.  The
resident told the man that he would have to go through

the office and the man became violent, trying to force himself into the apartment.  The resident "stood like this with my fist closed" and the man left.  The resident was unable to identify appellant in the courtroom at trial.

The second resident stated she was outside, leaving her apartment, when a man approached and asked about cleaning her carpets.  The man asked when she would return.  She said she did not know and then left quickly.  The resident called the apartment complex management office to report the incident.  She testified the man made her feel nervous and scared.  The resident did not identify appellant as the man who approached her.

The third resident testified that appellant knocked on her door about inspecting her carpets.  According to the resident, appellant told her that the maintenance supervisor sent him to inspect her carpets.  The resident recognized appellant from a prior occasion on which he had cleaned her carpets.  The resident let appellant into her apartment, and he inspected all the rooms.  Appellant then began to ask her questions such as her name, how much she weighed, if she had children, and when her husband would be home.  The questions made the resident feel uncomfortable.  She pretended to talk on the phone with her husband, asking if he was almost home. Appellant told the resident he was going to talk to the maintenance supervisor about changing the carpet and left. Appellant came back to the apartment shortly thereafter to retrieve his clipboard and then left again. Appellant came once more to the resident's apartment, but she did not open the door and instead called the apartment office.

Appellant testified in his own defense.  He admitted knocking on the complainant's door.  Appellant stated that he was planning to begin a carpet-cleaning venture where he would clean carpets for residents who wanted their carpets cleaned more often than the apartment complex would provide the service.  According to appellant, he knocked on the complainant's door and began inspecting her carpets.  He carried a knife to cut the carpet to determine its age.  According to appellant, the complainant offered him some of the food she was cooking, and after he finished eating, she attempted to seduce him.  Appellant testified that he was tempted, but did not give in to the seduction.  He said that when he rejected the complainant's advances, she became angry, started screaming, and pushed him outside.

-4-

Amaro-Solis v. State, No. 14-16-00484-CR, 2017 WL 4197661, at *1-2
(Tex. App. — Houston [14th Dist.] Sept. 21, 2017) (mem. op., not
designated for publication).[5]  The court of appeals affirmed the
conviction after concluding that the evidence of Amaro-Solis's
guilt was "overwhelming" and that any error in admitting the testi-
mony was "harmless."  Id., 2017 WL 4197661, at *5.  Thereafter, the
Texas Court of Criminal Appeals refused Amaro-Solis's petition for
discretionary review.[6]

Amaro-Solis challenged his conviction further by filing an
Application for a Writ of Habeas Corpus Seeking Relief From Final
Felony Conviction Under [Texas] Code of Criminal Procedure,
Article 11.07 ("State Habeas Application"), which raised the
following claims of prosecutorial misconduct and ineffective
assistance of counsel:

   (1) The prosecutor violated his right to due process by
       engaging in improper argument as follows:

       (a) calling Amaro-Solis a "predator" during
           his opening statement and his summation
           at the punishment phase of the trial;

       (b) attacking defense counsel's "ethics and
           defensive tactics" for seeking a sentence
           of probation;

       (c) asking for a life sentence based on
           future dangerousness; and

_____

[5]Memorandum Opinion, No. 14-16-00484-CR (Tex. App. — [14th
Dist.] Sept. 21, 2017), Docket Entry No. 14-6, pp. 111-20.

[6]Petition, Docket Entry No. 1, p. 3 ¶ 9 (referencing a
petition for discretionary review that was refused by the Texas
Court of Criminal Appeals on February 28, 2018, in PD-1345-17).

(d)   commenting   on   Amaro-Solis's   lack   of
remorse.

(2)   Defense   counsel   provided   ineffective   assistance
during   the   plea   negotiation   process   by   failing   to
advise   Amaro-Solis   of   the   consequences   of   rejecting
the   State's   offer   of   a   40-year   sentence.

(3)   Defense   counsel   provided   ineffective   assistance   by
failing   to   explain   the   "consequences   and
limitations"   of   electing   to   be   sentenced   by   the
jury   instead   of   the   trial   court.

(4)   The   prosecutor   violated   his   rights   by   failing   to
correct   "false"   testimony   by   the   DNA   analyst.[7]

The   Harris   County   District   Clerk's   Office   forwarded   the   State
Habeas   Application   to   the   Texas   Court   of   Criminal   Appeals   for
consideration   without   findings   of   fact,   conclusions   of   law,   or   a
recommendation   from   the   trial   court.[8]   The   Texas   Court   of   Criminal
Appeals   remanded   the   Application   to   the   trial   court   for   findings   of
fact   and   conclusions   of   law   on   Amaro-Solis's   contention   that   he   was
denied   effective   assistance   of   counsel   (Claims   2   and   3).[9]   In   doing
so,   the   Texas   Court   of   Criminal   Appeals   concluded   that   all   of   his
other   claims   (Claims   1   and   4)   were   "without   merit."[10]

---

[7]State Habeas Application, Docket Entry No. 14-6, pp. 9-16.

[8]In   the   Court   of   Criminal   Appeals   of   Texas,   Clerk's   Summary
Sheet   for   Postconviction   Applications   for   Writ   of   Habeas   Corpus
Under   [Texas]   Code   of   Criminal   Procedure,   Articles   11.07   and   11.071,
Ex parte Domingo Amaro-Solis,   Trial   Court   Writ   No.   1477624-A,   Docket
Entry   No.   14-6,   p.   1.

[9]See Ex parte Domingo Amaro-Solis,   Writ   No.   91,873-01,   2020
WL   6479626,   at   *1   (Tex.   Crim.   App.   Nov.   4,   2020)   (per   curiam).

[10]See id.,   2020   WL   6479626,   at   *1,   n.1.

-6-

After obtaining an affidavit from Amaro-Solis's defense counsel,[11] the trial court adopted the State's Proposed Findings of Fact, Conclusions of Law, and Order Following Remand ("Findings and Conclusions"), recommending that relief be denied.[12]  The Texas Court of Criminal Appeals denied Amaro-Solis's State Habeas Application without a written order based on findings made by the trial court and an independent review of the record.[13]

Amaro-Solis now seeks federal habeas corpus relief from his conviction under 28 U.S.C. § 2254, raising the same claims that were presented on state habeas review.[14]  Noting that these claims were rejected on the merits by the Texas Court of Criminal Appeals, the respondent moves for summary judgment on the grounds that Amaro-Solis is not entitled to relief under the legal standard that governs federal habeas corpus review.[15]

## II.  Standard of Review

Where the Texas Court of Criminal Appeals has denied relief without a written order, as it has in this case, that decision

---

[11]Affidavit of Carlos Rodriguez ("Rodriguez Affidavit"), Docket Entry No. 14-5, pp. 15-19.

[12]Findings and Conclusions, Docket Entry No. 14-5, p. 27.

[13]Action Taken on Writ No. 91,873-01 (Tex. Crim. App. April 14, 2021), Docket Entry No. 14-1, p. 1.

[14]Petition, Docket Entry No. 1, pp. 6-7; Memorandum, Docket Entry No. 2, pp. 2-3, 7-13.

[15]Respondent's MSJ, Docket Entry No. 13, pp. 7-25.

qualifies as an adjudication on the merits that is subject to deference under the federal habeas corpus standard of review established by the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), 28 U.S.C. § 2254(d). See Anaya v. Lumpkin, 976 F.3d 545, 550 (5th Cir. 2020); see also Schaetzle v. Cockrell, 343 F.3d 440, 443 (5th Cir. 2003) ("Because a federal habeas court only reviews the reasonableness of the state court's ultimate decision, the AEDPA inquiry is not altered when, as in this case, state habeas relief is denied without an opinion.").

Under the AEDPA standard a federal habeas corpus court may not grant relief unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). Likewise, if a claim presents a question of fact, a petitioner cannot obtain federal habeas relief unless he shows that the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

The highly deferential legal standard found in § 2254(d) "imposes important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases." Shoop v. Hill, 139 S. Ct. 504, 506 (2019). "A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the

-8-

Supreme Court or if it reaches a different conclusion than the
Supreme Court on materially indistinguishable facts." <u>Matamoros v.
Stephens</u>, 783 F.3d 212, 215 (5th Cir. 2015) (citations and internal
quotation marks omitted).  To constitute an "unreasonable applica-
tion of" clearly established federal law, a state court's holding
"must be objectively unreasonable, not merely wrong; even clear
error will not suffice." <u>Woods v. Donald</u>, 135 S. Ct. 1372, 1376
(2015) (quoting <u>White v. Woodall</u>, 134 S. Ct. 1697, 1702 (2014))
(internal quotation marks omitted).  "To satisfy this high bar, a
habeas petitioner is required to 'show that the state court's
ruling on the claim being presented in federal court was so lacking
in justification that there was an error well understood and
comprehended in existing law beyond any possibility for fairminded
disagreement.'" <u>Id.</u> (quoting <u>Harrington v. Richter</u>, 131 S. Ct.
770, 786-87 (2011)).

A state court's factual determinations are also entitled to
"substantial deference" on federal habeas corpus review. <u>Brumfield
v. Cain</u>, 135 S. Ct. 2269, 2277 (2015); <u>Wood v. Allen</u>, 130 S. Ct.
841, 849 (2010) (noting that "a state-court factual determination
is not unreasonable merely because the federal habeas court would
have reached a different conclusion in the first instance").  A
state court's findings of fact are "presumed to be correct" unless
the petitioner rebuts those findings with "clear and convincing
evidence." 28 U.S.C. § 2254(e)(1).  The presumption of correctness
extends not only to express factual findings, but also to implicit

-9-

or "'unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.'" <u>Murphy v. Davis</u>, 901 F.3d 578, 597 (5th Cir. 2018) (quoting <u>Valdez v. Cockrell</u>, 274 F.3d 941, 948 n.11 (5th Cir. 2001)).

## III.   <u>Discussion</u>

**A.   Prosecutorial Misconduct — Improper Argument (Claim 1)**

Amaro-Solis contends that he is entitled to relief from his conviction for aggravated sexual assault because the prosecutor violated his right to due process by engaging in improper argument.[16] He complains that the prosecutor (1) improperly referred to him as a "predator"; (2) attacked his defense counsel's request for a sentence of probation; (3) requested a life sentence; and (4) commented on his lack of remorse.[17] The Texas Court of Criminal Appeals summarily denied relief on this claim, finding that it was without merit.[18]

Claims of prosecutorial misconduct in a state court prosecution are governed by the clearly established standard set forth in <u>Darden v. Wainwright</u>, 106 S. Ct. 2464 (1986). <u>See Parker v. Matthews</u>, 132 S. Ct. 2148, 2153 (2012) (per curiam) (citing

_____

[16]Petition, Docket Entry No. 1, p. 6.

[17]<u>Id.</u>

[18]<u>See Ex parte Amaro-Solis</u>, Writ No. 91,873-01, 2020 WL 6479626, at *1, n.1 (Tex. Crim. App. Nov. 4, 2020) (per curiam); <u>see also</u> Action Taken on Writ No. 91,873-01 (Tex. Crim. App. April 14, 2021), Docket Entry No. 14-1, p. 1.

Darden as the "clearly established Federal law" relevant to claims of prosecutorial misconduct by prosecutors in state court proceedings). A constitutional violation occurs only where "the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden, 106 S. Ct. at 2471 (quoting Donnelly v. DeChristoforo, 94 S. Ct. 1868, 1871 (1974)). Federal habeas relief is rarely granted on the basis of prosecutorial misconduct because "a prosecutor's improper argument will, in itself, exceed constitutional limitations in only the most 'egregious cases.'" Menzies v. Procunier, 743 F.2d 281, 288-89 (5th Cir. 1984) (quoting Houston v. Estelle, 569 F.2d 372, 382 (5th Cir. 1978)). A prosecutor's comments will only render a trial unfair where the improper argument was "a crucial, critical, highly significant factor in the jury's determination of guilt." Whittington v. Estelle, 704 F.2d 1418, 1422 (5th Cir. 1983).

Amaro-Solis does not show that the prosecutor's comments, when considered in the context of the entire trial, were improper or that his proceedings were rendered fundamentally unfair for the reasons discussed below.

### 1. Characterization as a Predator (Claim 1a)

Amaro-Solis takes exception to the following portion of the prosecutor's opening statement, in which he characterized Amaro-Solis as a "predator":

    Fany Garcia, you'll hear, is a single mom . . .
[with] two kids living with her in an apartment complex,

-11-

> living in a one-bedroom apartment in Bellfort. Her kids
> go to school. She stays home most of the time during the
> day, and life goes on, up until Tuesday, January 21st,
> 2014.

> It will start off just like any other day. The kids
> are off at school, and she hears a knock at the door.
> She looks out the window and sees the defendant. She's
> being cautious. She's going to ask, what do you want?
> The defendant's going to say, I'm here to clean your
> carpets. That's not going to sound right to Fany. She's
> moving out soon. No reason for him to be here, but he
> keeps persisting. He's got a clipboard. He shows
> himself. So, she decides to crack the door a little bit,
> just to show him [her] carpets are fine. That's the only
> opening that this predator will need to get inside her
> home.[19]

After the jury heard all of the evidence and found Amaro-Solis

guilty of sexually assaulting Ms. Garcia at knife point, the

prosecutor referred to Amaro-Solis as a predator again during his

closing argument at the punishment phase of trial based on evidence

that Amaro-Solis attempted to prey upon other women at the same

apartment complex by using the same ruse.[20]

"A prosecutor's assertion of what he believes the evidence

will show and has shown is not error" and does not constitute

improper argument. Ortega v. McCotter, 808 F.2d 406, 410 (5th Cir.

1987) (citation omitted). "It is well established that an attorney

may recite to the jury those inferences and conclusions he wishes

them to draw from the evidence so long as they are based on the

---

[19]Court Reporter's Record, Vol. 3, Docket Entry No. 16-4, p. 12
lines 22-25 and p. 13 lines 1-14 (emphasis added).

[20]Court Reporter's Record, vol. 8, Docket Entry No. 16-9, p. 18
lines 2-6.

evidence." United States v. Delgado, 672 F.3d 320, 336 (5th Cir. 2012) (citing United States v. Webb, 950 F.2d 226, 230 (5th Cir. 1991)). "Moreover, 'unflattering characterizations of a defendant will not provoke a reversal when such descriptions are supported by the evidence.'" Id. (quoting United States v. Windom, 510 F.2d 989, 994 (5th Cir. 1975) (finding no error in a prosecutor's reference to a defendant as a "con artist")).

The evidence admitted at trial, which was summarized by the intermediate court of appeals and is set forth above, shows that Amaro-Solis gained entry to the victim's apartment using false pretenses and that he approached several other women at the same apartment complex in a similar manner. See Amaro-Solis, 2017 WL 4197661, at *1-2. Because Amaro-Solis's actions could reasonably be described as predatory behavior, he does not demonstrate that the prosecutor exceeded the bounds of permissible argument. See Darden, 106 S. Ct. at 2470-72 (finding no constitu-tional violation where a prosecutor referred to a defendant who committed a brutal murder as an "animal"). Amaro-Solis does not otherwise show that the prosecutor's characterization rendered the entire trial unfair or that the state court unreasonably denied relief on this claim.

### 2. Attacking Defense Counsel's Argument (Claim 1b)

Amaro-Solis contends that the prosecutor violated his rights by attacking his defense counsel's argument during the punishment

-13-

phase of the trial.[21] He takes exception to this portion of the prosecutor's summation, which took place after defense counsel asked the jury to show leniency by considering a sentence of probation:

| | |
|---|---|
| [PROSECUTOR]: | How dare anyone come up here - |
| [DEFENSE COUNSEL]: | Your Honor, that's improper argument on how dare. That's a personal attack. |
| [PROSECUTOR]: | Didn't even get to finish yet. |
| THE COURT: | Overruled. |
| [PROSECUTOR]: | How dare anyone come up here and tell you that given what you've heard, given the circumstances that you heard - |
| [DEFENSE COUNSEL]: | We renew our objection to say how dare someone who came up here. |
| [PROSECUTOR]: | Response to defense counsel's argument, Your Honor. |
| THE COURT: | Overruled.[22] |

After this exchange, the prosecutor continued to argue that it was "absolutely ridiculous" to suggest that Amaro-Solis deserved a sentence of probation in light of the violent nature of the offense and the evidence showing that he had concocted a scheme for entering women's apartments when they were alone for the purpose of raping them at knife-point.[23]

---

[21]Petition, Docket Entry No. 1, p. 6.

[22]Court Reporter's Record, vol. 8, Docket Entry No. 16-9, p. 14 lines 1-17.

[23]Id. at 14-15.

-14-

Answers to argument by opposing counsel are considered proper under Texas law, which defines permissible jury argument to include the following: (1) summation of the evidence presented at trial; (2) reasonable deductions drawn from that evidence; (3) responses to opposing counsel's argument; and (4) pleas for law enforcement. See Freeman v. State, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011) (citing Brown v. State, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008)). When viewed in context of the evidence showing that he perpetrated an aggravated sexual assault while wielding a deadly weapon and attempted to do the same on other occasions, Amaro-Solis does not show that the prosecutor's response to defense counsel's argument was improper or that it affected the fairness of his trial. See Darden, 106 S. Ct. at 2472 (an "invited response" during summation must be viewed in context to determine whether the response affected the fairness of the trial) (citing United States v. Young, 105 S. Ct. 1038, 1044 (1985)). As a result, Amaro-Solis does not show that the comments violated his rights or that the state court unreasonably denied relief on this claim.

### 3.   Seeking a Life Sentence (Claim 1c)

Amaro-Solis contends that the prosecutor also violated his rights during his summation at the punishment phase of the trial by asking for a life sentence based on Amaro-Solis's pattern of predatory behavior, which suggested future dangerousness.[24]   He points to the following portion of the argument:

---

[24]Petition, Docket Entry No. 1, p. 6.

[PROSECUTOR]:        . . . But you know what? No one can say
                     that that won't happen again. In fact,
                     the evidence shows you that not only can
                     it happen –

[DEFENSE COUNSEL]:   We object to improper argument on
                     possible future acts.

[PROSECUTOR]:        Your Honor, closing arguments. Future
                     danger is one of the absolute relevant
                     points to closing argument.

THE COURT:           Overruled.

[PROSECUTOR]:        Not only can this happen again, not only
                     is he a predator, who you've seen stalk
                     his prey, choose his prey, create a
                     little scheme to rape women, but he's
                     escalated. He started at age eighteen.[25]

After pointing to testimony in the record from the victim and other

witnesses who testified against Amaro-Solis, the prosecutor asked

for a life sentence "so no one else ever has to sit up on that

stand and talk and go through all that for what that man did."[26]

A Texas prosecutor's argument that the jury should consider

the future dangerousness of the defendant is considered a proper

plea for law enforcement, and therefore permissible, if it is

substantiated by the evidence. See Moranza v. State, 913 S.W.2d

718, 731 (Tex. App. — Waco 1995, pet. ref'd) (citing Martinez v.

State, 822 S.W.2d 276, 280 (Tex. App. — Corpus Christi 1991, no

pet.) (at guilt-innocence phase); Long v. State, 820 S.W.2d 888,

894–95 (Tex. App. — Houston [1st Dist.] 1991, pet. ref'd)

---

[25]Court Reporter's Record, vol. 8, Docket Entry No. 16-9, p. 19
lines 16-25 and p. 20 lines 1-3.

[26]Id. at 20 lines 20-22.

(guilt-innocence phase); Sterling v. State, 830 S.W.2d 114, 120 (Tex. Crim. App. 1992) (at punishment phase)). Amaro-Solis does not demonstrate that the prosecutor mischaracterized the evidence showing that he committed a violent sexual assault and engaged in predatory behavior. Because the prosecutor's request for a life sentence could be considered a proper plea for law enforcement, Amaro-Solis further fails to show that the prosecutor exceeded the bounds of permissible argument or that the state court unreasonably denied relief on this claim.

### 4. Commenting on Lack of Remorse (Claim 1d)

Amaro-Solis contends that the prosecutor violated his rights by commenting on his lack of remorse.[27] During his summation at the punishment phase of the trial the prosecutor argued that the victim had shown strength by testifying about what Amaro-Solis did to her and then asked the jury to "think about any remorse you've seen [from Amaro-Solis]."[28] The trial court sustained defense counsel's objection to the remark about remorse as an improper comment on Amaro-Solis's Fifth Amendment right to remain silent and asked the jury to disregard the remark.[29] The prosecutor clarified that his remark was related to Amaro-Solis's testimony during the guilt-

---

[27]Petition, Docket Entry No. 1, p. 6.

[28]Court Reporter's Record, vol. 8, Docket Entry No. 16-9, p. 17 lines 5-6.

[29]Id. lines 7-14.

-17-

innocence phase of the trial, noting that the jury could "be the judge if that was a person that was remorseful for what he did, if that was a person that was sorry for what he did, if that was a person who wanted to stop the suffering of Fany Garcia."[30] After the prosecutor commented a second time on the lack of remorse shown by Amaro-Solis, defense counsel repeated his objection, which the trial court sustained.[31] The prosecutor again clarified that any mention of remorse referred to "the time that [Amaro-Solis] chose to take the stand."[32]

The Supreme Court has held that the Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the [trial] court that such silence is evidence of guilt." Griffin v. California, 85 S. Ct. 1229, 1233 (1965). While a prosecutor's argument about lack of remorse can be construed to comment on a defendant's decision to remain silent and not testify, such arguments have been held proper when there is evidence in the record to support the prosecution's argument that the defendant lacked remorse. See Davis v. State, 782 S.W.2d 211, 223 (Tex. Crim. App. 1989); see also Isaacs v. Head, 300 F.3d 1232, 1271 (11th Cir. 2002) (noting that "several other courts have found that, under many circumstances, arguments or comments related to a

---

[30] Id. lines 20-23.

[31] Id. at 18-19.

[32] Id. at 19 lines 13-14.

-18-

lack of remorse do not implicate the defendant's decision not to testify because they may relate to other evidence properly before the jury or to the defendant's demeanor at trial") (citations omitted).

The record shows that Amaro-Solis chose to take the stand and testify during the guilt-innocence phase of the trial, telling the jury that the victim attempted to seduce him and became belligerent when he rejected her.[33] Despite overwhelming evidence showing that Amaro-Solis sexually assaulted the victim after gaining access to her apartment, Amaro-Solis persisted with this implausible story throughout cross-examination.[34] The jury rejected Amaro-Solis's version of the events and found him guilty after considering all of the evidence, which showed that he attacked the victim and sexually assaulted her before fleeing her apartment, leaving behind the clipboard that he used as a prop while posing as a carpet cleaner and the knife that he used to threaten the victim with during the offense.[35]

The prosecutor's remarks about Amaro-Solis's apparent lack of remorse, which were made during argument at the punishment phase of the proceeding, do not constitute a direct comment on his failure

---

[33]Court Reporter's Record, vol. 5, Docket Entry No. 16-6, pp. 124-26.

[34]Id. at 129-53.

[35]Court Reporter's Record, vol. 3, Docket Entry No. 16-4, pp. 30-34, 48, 59-60, 73-92.

to testify. Reviewing the prosecutor's argument in context of the entire trial, the remarks could be considered a reasonable inference or deduction from the testimony that Amaro-Solis gave during the guilt-innocence phase of the proceeding and his demeanor in front of the jury. The record confirms that after defense counsel raised an objection and the trial court instructed the jury to disregard the prosecutor's remark about lack of remorse, the prosecutor clarified that any reference to remorse related to the testimony that the jury heard when Amaro-Solis took the stand.[36] Where a prosecutor clearly explains that his comments about lack of remorse are based on what the jury observed at trial and are supported by testimony that the jury heard, such comments are considered within the bounds of proper summation and are not an improper comment on the defendant's failure to testify. See Davis, 782 S.W.2d at 223. Under these circumstances, Amaro-Solis does not show that the prosecutor's argument violated his right to a fair trial.[37] Absent a constitutional violation, Amaro-Solis does not

---

[36]Court Reporter's Record, vol. 8, Docket Entry No. 16-9, p. 17 lines 17-23 and p. 19 lines 13-14.

[37]Even if the prosecutor's remarks about lack of remorse could be construed as indirectly commenting on the defendant's failure to testify during the punishment phase of the trial, a trial court's prompt instruction to disregard has been held to cure the error. See Jackson v. State, 745 S.W.2d 4, 15 (Tex. Crim. App. 1988); Mungaray v. State, No. 08-01-00505-CR, 2004 WL 576082, at *5 (Tex. App. — El Paso March 24, 2004, pet. ref'd) (concluding that "an instruction by the trial court to the jury to disregard any such comment is generally sufficient to cure any error which may have occurred" except in cases where the comment makes a direct or
(continued...)

-20-

show that the state court's rejection of his prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Parker, 132 S. Ct. at 2155 (quoting Harrington, 131 S. Ct. at 786-87). Accordingly, Amaro-Solis does not show that he is entitled to relief under the deferential AEDPA standard.

## B. Prosecutorial Misconduct - False Evidence (Claim 4)

Amaro-Solis contends that the prosecutor violated his right to due process during the guilt-innocence phase of the trial by failing to correct "false" testimony given by DNA analyst Jisel Bailon.[38] Pointing to testimony about swabs taken from the victim's sexual assault kit,[39] Amaro-Solis appears to contend that Bailon

---

[37](...continued)

"blatant reference to [the defendant's] failure to take the stand") (citations omitted). Likewise, the trial court instructed the jury before closing arguments at the punishment phase of trial that the defendant's decision not to testify during that portion of the proceeding could not be considered during deliberations "for any purpose whatsoever." Charge of the Court on the Assessment of Punishment, Docket Entry No. 16-1, p. 216. When considered in the context of the entire trial, Amaro-Solis fails to show that the comments "had [a] substantial and injurious effect or influence in determining the jury's verdict," meaning that the error, if any, was harmless. Brecht v. Abrahamson, 113 S. Ct. 1710, 1714 (1993) (citation and internal quotation marks omitted); see also Davis v. Quarterman, 237 F. App'x 903, 908 (5th Cir. 2007). For this additional reason, Amaro-Solis is not entitled to relief on this claim.

[38]Petition, Docket Entry No. 1, p. 7.

[39]Id.

committed perjury when she stated that he was "included as a possible contributor to the major component of [a DNA] mixture" obtained from a "sperm fraction."[40]  Amaro-Solis asserts that the testimony is false because it contradicts an earlier statement by Bailon, in which she pointed to a lab report stating that he was excluded from a "single-source" DNA profile that matched the victim.[41]  The Texas Court of Criminal Appeals summarily denied relief on this claim, finding it meritless.[42]

A prosecutor may not knowingly suborn perjury, present false evidence, or allow false testimony to go uncorrected at trial, see Giglio v. United States, 92 S. Ct. 763, 765-66 (1972), and Napue v. People of the State of Illinois, 79 S. Ct. 1173, 1177 (1959).  To demonstrate a constitutional violation in this context, a defendant must show that (1) the testimony was actually false; (2) the prosecutor knew it was false; and (3) the testimony was material. Canales v. Stephens, 765 F.3d 551, 573 (5th Cir. 2014).  Amaro-Solis is not entitled to relief because he fails to satisfy the first element of this test by establishing that there was false testimony at his trial.

[40]Court Reporter's Record, vol. 5, Docket Entry No. 16-6, p. 84 line 25 - p. 85 line 5.

[41]Petition, Docket Entry No. 1, p. 7; Court Reporter's Record, vol. 5, Docket Entry No. 16-6, p. 83 lines 11-12.

[42]See Ex parte Domingo Amaro-Solis, Writ No. 91,873-01, 2020 WL 6479626, at *1, n.1 (Tex. Crim. App. Nov. 4, 2020) (per curiam); see also Action Taken on Writ No. 91,873-01 (Tex. Crim. App. April 14, 2021), Docket Entry No. 14-1, p. 1.

-22-

The respondent notes that Amaro-Solis's claim concerns Bailon's testimony about laboratory tests performed on more than one DNA sample and that her statements were not inconsistent or false.[43]   The record reflects that Bailon testified about the results of DNA testing of swabs from the victim's sexual assault kit that was done by an "outsource" laboratory and also "in-house" testing that was done at the Houston Forensic Science Center ("HFSC").[44]   According to Bailon, Amaro-Solis was excluded as a contributor from a "single-source profile" that was determined to belong to the victim, but neither the victim nor Amaro-Solis could be excluded as contributors of a "DNA mixture" that was obtained from a sperm fraction found in the victim's vagina.[45]   This evidence, which was discussed by the intermediate appellate court during Amaro-Solis's direct appeal, "strongly supported the complainant's testimony" and the State's case:

> The sexual assault nurse examiner took swabs from the complainant for testing. In doing so, she noticed a small cut on the complainant's hand that the complainant said was from the knife appellant used. Police obtained a DNA sample from appellant.

_____

[43]Respondent's MSJ, Docket Entry No. 13, p. 16.

[44]Court Reporter's Record, vol. 5, Docket Entry No. 16-6, pp. 80-85. See also Bode Technology, Forensic Case Report, Docket Entry No. 14-6, pp. 77-78; HFSC Laboratory Report #5, Docket Entry No. 14-6, pp. 79-80; HFSC Amended Laboratory Report #5, Docket Entry No. 14-6, pp. 82-84; HFSC Laboratory Report #9, Docket Entry No. 14-6, pp. 85-87.

[45]Court Reporter's Record, vol. 5, Docket Entry No. 16-6, pp. 83, 85.

The results of tests on the swab obtained from the complainant's vagina showed a sperm fraction. The sperm fraction contained a mixture of DNA from two individuals. Evidence showed that sometimes, if the sperm sample was not cleanly separated from the rest of the biological material, the sperm sample could contain genetic material that matched the complainant. Forensic analysts tested parts of the swabs on two different occasions. The sperm swab contained a mixture of DNA from two individuals, a major contributor and a minor contributor.

For the first round, analysts at the Houston Forensic Science Center sent the material to a lab in Virginia. During the first test, appellant could not be excluded as a possible contributor to the minor component of the mixture. The Houston Forensic Science Center then tested the material to confirm the test results. The second time, there was not enough of the sample left to obtain sufficient data to reach any conclusion about the minor contributor. Evidence showed that there was a 1 in 690 chance that an unrelated individual of appellant's ethnicity would match the results of the minor contributor to the sperm fraction.

This evidence strongly supported the complainant's testimony. Appellant testified that he never unbuttoned his pants while the complainant testified that appellant penetrated her. The presence of sperm on the swabs supported the complainant's version of events. The complainant testified that her husband had died and she lived alone with her two children. While appellant argued that the DNA statistics meant other Houstonians likely have the same combination of observed characteristics, the percentage of other individuals matching the observed DNA characteristics is still miniscule. And, the jury already knew that appellant was in the complainant's apartment and that the complainant said he attacked her.

Amaro-Solis, 2017 WL 4197661, at *4. The state appellate court's findings of fact are entitled to the presumption of correctness on federal habeas corpus review. See 28 U.S.C. § 2254(e)(1); Sumner v. Mata, 102 S. Ct. 1303, 1304 (1982) (per curiam) (observing that "the presumption of correctness is equally applicable when a state

appellate court, as opposed to a state trial court, makes the finding of fact"); Moody v. Quarterman, 476 F.3d 260, 268 (5th Cir. 2007) (same) (citations omitted).

The testimony at trial appears consistent with the laboratory reports, which show that Amaro-Solis could not be excluded as a contributor to the DNA mixture found in the sperm fraction.[46] Amaro-Solis does not point to any evidence showing that Bailon's testimony was false or that the prosecutor knew it was false but failed to correct the error when it was made. Absent a showing that the prosecutor knowingly presented false testimony, Amaro-Solis does not demonstrate that the prosecutor violated his rights or that the state court's rejection of this claim was contrary to clearly established precedent. Therefore, Amaro-Solis is not entitled to relief on this claim.

## C. Ineffective Assistance of Counsel (Claims 2 and 3)

Amaro-Solis contends that he was denied effective assistance of counsel during the plea negotiation process when his attorney failed to advise him of the consequences of rejecting the State's offer and going to trial (Claim 2).[47] He also contends that his counsel was ineffective when he failed to advise him about his

---

[46]See HFSC Laboratory Report #5, Docket Entry No. 14-6, pp. 79-80; HFSC Amended Laboratory Report #5, Docket Entry No. 14-6, pp. 82-84; HFSC Laboratory Report #9, Docket Entry No. 14-6, pp. 85-87.

[47]Petition, Docket Entry No. 1, p. 6.

-25-

options when making an election between having his sentence determined by the jury or the trial court (Claim 3).⁴⁸ The state habeas corpus court entered findings of fact and concluded that Amaro-Solis failed to prove that his conviction was improperly obtained in violation of the right to reasonably effective assistance of counsel.⁴⁹ The Texas Court of Criminal Appeals concluded that Amaro-Solis was not entitled to relief, rejecting his claims based on findings made by the state habeas corpus court and an independent review of the record.⁵⁰

Claims for ineffective assistance of counsel are governed by the standard announced in Strickland v. Washington, 104 S. Ct. 2052 (1984). To prevail under the Strickland standard a criminal defendant must demonstrate (1) that his counsel's performance was deficient and (2) that the deficient performance resulted in prejudice. Id. at 2064. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id.

To satisfy the deficient-performance prong, "[t]he defendant must show that counsel's representation fell below an objective

---

⁴⁸Id. at 7.

⁴⁹Findings and Conclusions, Docket Entry No. 14-5, pp. 26-27 (Conclusions of Law Nos. 1-5).

⁵⁰Action Taken on Writ No. 91,873-01 (Tex. Crim. App. April 14, 2021), Docket Entry No. 14-1, p. 1.

standard of reasonableness." <u>Strickland</u>, 104 S. Ct. at 2064.  This is a "highly deferential" inquiry that requires "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 2065.  "It is only when the lawyer's errors were so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment that <u>Strickland's</u> first prong is satisfied." <u>Buck v. Davis,</u> 137 S. Ct. 759, 775 (2017) (citation and internal quotation marks omitted).

To satisfy the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 104 S. Ct. at 2068.  A habeas petitioner must "affirmatively prove prejudice." <u>Id.</u> at 2067.  A petitioner cannot satisfy the second prong of <u>Strickland</u> with mere speculation and conjecture. <u>See Bradford v. Whitley</u>, 953 F.2d 1008, 1012 (5th Cir. 1992).  Conclusory allegations are insufficient to demonstrate either deficient performance or actual prejudice. <u>See Day v. Quarterman,</u> 566 F.3d 527, 540-41 (5th Cir. 2009).

Where an ineffective-assistance claim was rejected by the state court, the Supreme Court has clarified that the issue on federal habeas review is not whether "'the state court's determination' under the <u>Strickland</u> standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" <u>Knowles v. Mirzayance,</u> 129 S. Ct. 1411, 1420 (2009) (citation omitted).  When applied in tandem with the highly

-27-

deferential standard found in 28 U.S.C. § 2254(d), review of ineffective-assistance claims is "doubly deferential" on habeas corpus review. Id. at 1413; see also Richter, 131 S. Ct. at 788 (emphasizing that the standards created by Strickland and § 2254(d) are both "highly deferential," and "'doubly' so" when applied in tandem) (citations and quotations omitted); Beatty v. Stephens, 759 F.3d 455, 463 (5th Cir. 2014) (same). Amaro-Solis does not show that his counsel's performance was ineffective under the doubly deferential standard for reasons discussed below.

## 1. Amaro-Solis's Decision to Reject a Plea Offer

Shortly before the start of trial, Amaro-Solis confirmed on the record that he was rejecting the State's offer of a 40-year sentence:

DEFENSE COUNSEL:        . . . I want to put on the record that the last offer from the State was forty years, and [Amaro-Solis] does not want forty years.

                        You're rejecting forty?

DEFENDANT:              Correct.[51]

Amaro-Solis contends that he was denied effective assistance in connection with plea negotiations because his counsel simply advised him to reject the State's offer and go to trial without giving any reasons.[52] Amaro-Solis claims that he "blindly" followed counsel's advice without being told the consequences of going to

[51]Court Reporter's Record, vol. 2, Docket Entry No. 16-3, p. 5.

[52]Petition, Docket Entry No. 1, p. 6.

trial.⁵³ He claims further that counsel's advice was "unsound" because he "had not fully investigated the case" and did not give him enough information to make an informed decision about whether to enter a plea.⁵⁴

The Supreme Court has held that the Sixth Amendment right to effective assistance of counsel outlined in Strickland extends to plea negotiations. See Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012); see also Missouri v. Frye, 132 S. Ct. 1399, 1408 (2012) (holding that, "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused"). To establish prejudice in this context a defendant must show that "the outcome of the plea process would have been different with competent advice" from his counsel. Lafler, 132 S. Ct. at 1384. Where an offer has been rejected, a defendant must show that "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)." Id. at 1385. He must also show "that the [trial] court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less

---

⁵³Id.

⁵⁴Id.

severe than under the judgment and sentence that in fact were imposed." Id.

In response to Amaro-Solis's allegations of ineffective assistance, his defense counsel filed an affidavit with the state habeas corpus court.[55] Defense counsel reported that Amaro-Solis "did not ever consider taking the State's offer of 40 years in prison" because Amaro-Solis claimed that the assault "did not happen."[56] When defense counsel reviewed the scientific evidence against him, Amaro-Solis insisted that "this was a consensual sexual encounter."[57] Defense counsel explained that he could not have Amaro-Solis enter a guilty plea "to something he [said] he did not do."[58]

Defense counsel stated further that he did not advise Amaro-Solis whether to take the plea or not, but "made all his options clear and answered all of his questions so that he could make the best decision about this life changing case."[59] Counsel explained that the risk of going to trial on a first-degree felony meant that he faced punishment of a minimum of five years to a maximum of 99 years or life in prison if the jury found him guilty.[60] He also

---

[55]Rodriguez Affidavit, Docket Entry No. 14-5, pp. 15-19.

[56]Id. at 16.

[57]Id.

[58]Id.

[59]Id.

[60]Id.

advised Amaro-Solis that because he had not been convicted of a felony previously he was eligible for the jury to recommend a sentence of community supervision, <u>i.e.,</u> probation, for a term of up to ten years.[61] According to defense counsel Amaro-Solis "understood his options and he also never [wavered] from rejecting the State's offer of forty years in prison."[62] Counsel emphasized that he informed Amaro-Solis about the evidence against him but that it was his decision to go to trial and take the risk of receiving first-degree felony punishment "with the hope [of] win[n]ing the case or getting probation."[63]

The state habeas corpus court found that defense counsel's affidavit was "credible" and that Amaro-Solis chose to proceed to trial after counsel explained his options, the range of punishment, and the State's evidence.[64] The state habeas corpus court also found that Amaro-Solis's claim that trial counsel advised him to decline a 40-year plea offer without advising him about the punishment range or the evidence was "not credible."[65]

Credibility findings, such as those made by the state habeas corpus court in this case, are entitled to substantial deference on

---

[61]<u>Id.</u>

[62]<u>Id.</u>

[63]<u>Id.</u>

[64]Findings and Conclusions, Docket Entry No. 14-5, pp. 23-24, ¶¶ 10, 13-14, 17, 20-21.

[65]<u>Id.</u> at 23-24, ¶¶ 15, 18, 22.

federal habeas review. See Coleman v. Quarterman, 456 F.3d 537, 541 (5th Cir. 2006) (citing Guidry v. Dretke, 397 F.3d 306, 326 (5th Cir. 2005)). The state court's factual findings and credibility determinations are presumed correct for purposes of federal habeas corpus review unless they are rebutted with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Valdez v. Cockrell, 274 F.3d 941, 947 (5th Cir. 2001). The record, which shows that Amaro-Solis testified in his own defense that he did not sexually assault the victim and that she attempted to seduce him while he was inspecting her carpet,[66] supports defense counsel's statement that Amaro-Solis rejected the State's offer of a 40-year sentence because he wished to present his side of the story in hopes of winning an acquittal.

Amaro-Solis does not present evidence to challenge any of the fact findings or credibility determinations made by the state habeas corpus court. His conclusory allegations are insufficient to demonstrate that he would have accepted the State's plea offer and do not establish deficient performance or actual prejudice. See Day, 566 F.3d at 540-41; Lincecum v. Collins, 958 F.2d 1271, 1279 (5th Cir. 1992) (denying habeas relief where petitioner "offered nothing more than the conclusory allegations in his pleadings" to support claim that counsel was ineffective for failing to investigate and present evidence). Therefore, Amaro-

_____

[66]Court Reporter's Record, vol. 5, Docket Entry No. 16-6, pp. 124-26.

Solis fails to show that the Texas Court of Criminal Appeals unreasonably rejected his claim or that the state court's denial of relief "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Under these circumstances, Amaro-Solis is not entitled to federal habeas relief on this claim.

## 2. Failure to Give Adequate Advice About Sentencing

The record reflects that Amaro-Solis elected to have the jury determine his sentence prior to the start of trial.[67] Amaro-Solis, who received a 55-year prison sentence, contends that he is entitled to relief because his counsel was deficient for failing to advise him of the consequences of electing to have the jury determine his punishment instead of having the trial court decide his sentence.[68]

In his affidavit to the state habeas corpus court defense counsel explained that he advised Amaro-Solis to have the jury assess punishment in the event of a guilty verdict after discussing the potential benefits.[69] Defense counsel noted that electing to have the jury impose punishment meant that they could pose questions during voir dire as a way "to gain favorable strikes for

---

[67]Defendant's Election As To Punishment, Docket Entry No. 16-1, p. 128.

[68]Petition, Docket Entry No. 1, p. 7.

[69]Rodriguez Affidavit, Docket Entry No. 14-5, p. 17.

cause," presumably to weed out jurors who would not consider probation.[70] Defense counsel thought that a jury might sympathize with testimony from Amaro-Solis's family members and might consider a lower sentence or even probation if he were found guilty.[71] Defense counsel explained to Amaro-Solis that because he was charged with an aggravated felony, only the jury would have the option to consider a sentence of probation.[72] Defense counsel also advised Amaro-Solis that there was no guarantee that he would get a sympathetic jury and that he could get a sentence of "anything from probation to life in prison."[73] According to defense counsel, "[Amaro-Solis] always made it clear that if [he] did not win [an acquittal], he wanted probation."[74] Because a judge would not have the option to consider probation as a sentence if he were found guilty of an aggravated offense with a deadly weapon, defense counsel recommended having the jury determine his sentence.[75]

Based on defense counsel's affidavit, the state habeas corpus court found that Amaro-Solis chose to have the jury assess his punishment after counsel advised him about benefits and potential

---

[70] Id.

[71] Id.

[72] Id.

[73] Id.

[74] Id. at 18.

[75] Id.

consequences.[76] The state habeas corpus court found further that Amaro-Solis's claim to the contrary was "not credible" and that he further failed to show that his counsel's conduct was objectively unreasonable or deficient.[77]

Defense counsel's affidavit and the state habeas corpus court's findings are consistent with Texas law, which provides that a defendant may elect to have his sentence determined by the jury, who may recommend a sentence of community supervision or probation in cases where the trial court is not authorized to do so, depending on the nature of the offense. See, e.g., Ivey v. State, 277 S.W.3d 43, 45-56 (Tex. Crim. App. 2009) (discussing Article 42.12, § 3 of the Texas Code of Criminal Procedure and the availability of community supervision from the trial court or jury). Amaro-Solis does not offer any support for his claim that his counsel advised him to have the jury assess his punishment without ensuring that he understood his options and the potential consequences. The Fifth Circuit has emphasized that "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding." Ross v. Estelle, 694 F.2d 1008, 1012 (5th Cir. 1983) (citing Schlang v. Heard, 691 F.2d 796, 798 (5th Cir. 1982) (collecting cases)). Because his conclusory allegations are insufficient to demonstrate deficient performance or actual

---

[76]Findings and Conclusions, Docket Entry No. 14-5, pp. 25-26 ¶¶ 24-28.

[77]Id. at 26, ¶¶ 29-33.

prejudice, Amaro-Solis fails to show that he was denied effective assistance by his counsel; and he does not otherwise establish that the state court's decision to deny relief was unreasonable under the Strickland standard. Absent a valid claim for relief, Amaro-Solis does not show that he is entitled to a federal writ of habeas corpus under 28 U.S.C. § 2254(d), and his Petition must be dismissed.

## IV. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that 'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" Tennard v. Dretke, 124 S. Ct. 2562, 2565 (2004) (quoting Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000)). Under the controlling standard this requires a petitioner to show that "jurists of reason could disagree with the [reviewing] court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Buck v. Davis, 137 S. Ct. 759, 773 (2017) (citation and internal quotation marks omitted).

After careful review of the pleadings and the applicable law, the court concludes that reasonable jurists would not find the assessment of the constitutional claims debatable or wrong. Because the petitioner does not demonstrate that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

### V. Conclusion and Order

The court **ORDERS** as follows:

1.  Respondent Lumpkin's Motion for Summary Judgment (Docket Entry No. 13) is **GRANTED**.

2.  The Petition for a Writ of Habeas Corpus By a Person in State Custody filed by Domingo Amaro-Solis (Docket Entry No. 1) is **DENIED**, and this action will be dismissed with prejudice.

3.  A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this the 11th day of March, 2022.


                                    SIM LAKE
                    SENIOR UNITED STATES DISTRICT JUDGE